# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

**JACQUIE ALBRIGHT, as Parent and Next Best Friend of
CHILD DOE**                                                      **PLAINTIFF**

**V.**                          **CASE NO. 3:16-CV-3011**

**MOUNTAIN HOME SCHOOL DISTRICT;
DEBBIE ATKINSON, Director of Special Education; and
SUSANNE BELK, BCBA Consultant**                                 **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are:

- Plaintiff Jacquie Albright's Brief Supporting IDEA Appeal (Doc. 49) from the Hearing Officer's Final Decision and Order (Doc. 72-1); and Defendants Mountain Home School District's ("the District"), Debbie Atkinson's, and Susanne Belk's Brief in Opposition (Doc. 53);

- Plaintiff's Motion to File Amended and Supplemental Complaint and Related Relief (Doc. 75) and Brief in Support (Doc. 76); and Defendants' Response in Opposition (Doc. 80);

- Plaintiff's Motion to Accept Response to Summary Judgment Out of Time (Doc. 84); and Defendants' Response in Opposition (Doc. 90);

- Plaintiff's Motion to File Pretrial Conference Information Sheet Out of Time (Doc. 93); Defendants' Response in Opposition (Doc. 94) and Supplement (Doc. 95); and Plaintiff's Response to Defendants' Opposition (Doc. 96);

- Defendants' Motion for Summary Judgment (Doc. 72), Statement of Undisputed Facts in Support (Doc. 73), and Brief in Support (Doc. 74); and Plaintiff's Response

in Opposition (Doc. 81), Supplements (Docs. 82–85), Brief in Support (Doc. 86), Statement of Facts Precluding Summary Judgment (Doc. 87), and Response to Defendants' Statement of Material Facts (Doc. 88);

- Defendants' Combined Motion to Exclude Opinions of Dr. Howard Knoff and Brief in Support (Doc. 67); Plaintiff's Response in Opposition (Doc. 68) and Brief in Support (Doc. 69); and Defendants' Reply (Doc. 71);

- Defendants' Motion Requesting that the Court Disregard Plaintiff's Improperly Filed Reply (Doc. 97); and

- Defendants' four Motions in Limine and Briefs in Support (Docs. 98–104).

For the reasons given below, the decision of the Hearing Officer is **AFFIRMED**; Plaintiff's Motion to File Amended and Supplemental Complaint and Related Relief (Doc. 75), Motion to Accept Response to Summary Judgment Out of Time (Doc. 84), and Motion to File Pretrial Conference Information Sheet Out of Time (Doc. 93) are **DENIED**; Defendants' Motion for Summary Judgment (Doc. 72) is **GRANTED**; and Defendants' Motion to Exclude Opinions of Dr. Howard Knoff (Doc. 67), Motion Requesting that the Court Disregard Plaintiff's Improperly Filed Reply (Doc. 97), and four Motions in Limine (Docs. 98, 99, 101, 103) are **MOOT**.

## I. BACKGROUND

Ms. Albright is an employee of the District, and her daughter, Child Doe, is a student at the District. Child Doe has autism spectrum disorder, attention deficit hyperactivity disorder, and mild mental retardation. Under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the District must provide Child Doe with a free appropriate public education ("FAPE"), *id.* at § 1412(a)(1), which includes special

education and related services in conformity with an individualized education program ("IEP"), *id.* at § 1401(9)(D). The IDEA sets out a process by which teachers, school officials, and a child's parents should collaborate to draft an IEP that fits the child's unique needs. *See id.* at § 1414(d)(1)(B).

When a parent disagrees with other members of the IEP team over what the IEP should include, the parties may attempt to resolve the disagreement, either through a "preliminary meeting" or through mediation. *Id.* at §§ 1415(e), (f)(1)(B)(i). If unsuccessful, then the parent may file a complaint with the Arkansas Department of Education to initiate a "due process hearing." *See id.* at § 1415(f)(1)(A). Following the Hearing Officer's decision, the losing party may appeal it by filing a lawsuit in federal court. *See id.* at § 1415(i)(2)(A). And that is what happened here.

By now, a long history of bad blood has accumulated between Ms. Albright and the District concerning Child Doe's educational needs. The due process complaint that is the subject of the instant appeal, for example, was actually the third such complaint that Ms. Albright filed against the District; the previous two were settled in August 2012 and March 2014, respectively, before their due process hearings occurred. Ms. Albright also filed three more due process complaints against the District after the instant one. While it would probably be impossible to identify any single coup de gras for any remaining shreds of trust or good will between the parties, some strong contenders would likely be Ms. Albright's practice of concealing audio recorders in Child Doe's clothes at school, or the various reports that District personnel have filed with the Arkansas Department of Human Services and the local police department against Ms. Albright.

The due process complaint that is the subject of the instant appeal concerns whether Child Doe was denied a FAPE between November 15, 2013 and October 17, 2014. The Hearing Officer issued his decision on October 29, 2015, finding that no such denial of a FAPE occurred. *See* Doc. 72-1. Plaintiff filed her Complaint (Doc. 1) in this Court on January 27, 2016, and then replaced it on August 23, 2016 with her Amended Complaint (Doc. 41), which sets forth six counts regarding: (1) her IDEA appeal from the Hearing Officer's October 2015 decision; (2) various violations of the United States Constitution under 42 U.S.C. § 1983; (3) disability discrimination in violation of Section 504 of the Rehabilitation Act; (4) retaliation in violation of Section 504 of the Rehabilitation Act; (5) disability discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"); and (6) various causes of action under Arkansas state law. In addition to the District, Plaintiff has also named two individuals as Defendants: Debbie Atkinson, who is the District's Director of Special Education, and Susanne Belk, who is a Board Certified Behavior Analyst consultant for the District and a member of Child Doe's IEP team.

Count 1, the IDEA appeal, has been fully briefed by the parties for many months now. A hearing for oral argument on the IDEA appeal was continued multiple times, and its most recent setting of March 30, 2017 was cancelled two days before it was to be held, on account of counsel's illness. Since its cancellation, and upon further review of the quite voluminous administrative record, the Court has concluded that oral argument would not be useful to its decisionmaking process on the IDEA appeal, and that accordingly the hearing need not be reset. Therefore, the IDEA appeal is ripe for decision.

Defendants have moved for summary judgment on Counts 2 through 6, and moved to exclude opinions by an expert witness for Plaintiff named Dr. Howard Knoff. Plaintiff

has three pending motions to untimely file various documents.  All five of these motions have also been fully briefed and are likewise ripe for decision.

Below, the Court will first rule on Plaintiff's IDEA appeal.  Then the Court will take up Plaintiff's three motions regarding timeliness.  Next, the Court will address Defendants' summary judgment motion.  And finally, the Court will deal with Defendants' expert motion, as well as five other motions that Defendants filed on July 5, 2017.

## II.  DISCUSSION

### A.  Plaintiff's IDEA Appeal—Count 1 of the Amended Complaint

The Court begins with Count 1 of Plaintiff's Amended Complaint: her appeal from the Hearing Officer's Final Decision and Order (Doc. 72-1), which found in favor of the District with respect to her October 17, 2014 Due Process Complaint (Doc. 49-1).  This Court must "review the administrative record, hear additional evidence if requested, and 'basing its decision on the preponderance of the evidence, . . . grant such relief as [it] determines is appropriate.'"  *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 547 F.3d 795, 803 (8th Cir. 2011) (quoting 20 U.S.C. § 1415(i)(2)(C)) (alterations in original).  In so doing, this Court "must independently determine whether the child in question has received a FAPE," while also giving "due weight to agency decision-making" since the Hearing Officer "had an opportunity to observe the demeanor of the witnesses and because a district court should not substitute its own notions of sound educational policy for those of the school authorities that it reviews."  *See id.* (internal alterations and quotation marks omitted).  The centerpiece of a FAPE is the IEP, *see Honig v. Doe*, 484 U.S. 305, 311 (1988), which must be "reasonably calculated to enable a child to make

progress appropriate in light of the child's circumstances," *see Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017)*.

In her Appeal Brief, Plaintiff argues that the Hearing Officer erred in finding that Child Doe was not deprived of a FAPE, and that this ultimate error rested primarily on three erroneous findings: (1) that Ms. Albright had meaningful participation in the IEP process, *see* Doc. 49, pp. 12–16; (2) that it was unnecessary to perform a new functional behavioral assessment ("FBA") on Child Doe and develop a new behavioral intervention plan ("BIP") for her during the relevant time period, *see id.* at 16–21; and (3) that the IDEA does not require the use of evidence-based practices in an IEP, *see id.* at 21–22. With regard to the issue of parental involvement, Plaintiff is certainly correct that "[t]he core of the [IDEA] . . . is the cooperative process that it establishes between parents and schools . . . ." *Schaffer v. Weast*, 546 U.S. 49, 53 (2005). But this Court wholeheartedly agrees with the Hearing Officer's observation that "[t]he District's compilation of over several hundred pages of emails and the Parent's multiple pages of transcriptions of various IEP meetings is evidence enough to deny the Parent's claim that she was not provided opportunity to participate in the development of the Student's IEPs." (Doc. 72-1, p. 7). As for the necessity or lack thereof for a new FBA and BIP—it was proper for the Hearing Officer to credit the testimony of Ms. Belk that none was necessary because she had already conducted an FBA when Child Doe was in second grade, Child Doe's function of maladaptive behavior had not changed since then, and the BIP that was already in place was working well. *See id.* at pp. 14–15. This is consistent with the requirements of the IDEA, which mandates that an FBA be conducted after the child is removed because of disability-caused disciplinary problems *unless* one was already conducted prior to the

6

problematic behavior's occurrence, and which only requires modification of preexisting BIPs "as necessary, to address the behavior." *See* 20 U.S.C. § 1415(k)(1)(F)(i)–(ii).

The matter of "evidence-based practices" presents a more difficult and nuanced issue here. Plaintiff's Appeal Brief takes issue with the Hearing Officer's statement that "[a]fter a lengthy bantering with the District's counsel on cross examination [Plaintiff's expert witness] admitted that the IDEA does not require the use of evidence-based practices." *See* Doc. 72-1, p. 25; Doc. 49, p. 21. Plaintiff then asserts in rather broad language that the District "fail[ed] to address [Child Doe]'s escalating behaviors utilizing evidence based practices to effectively address problematic behaviors in children with autism," and that this failure "violated IDEA's requirement to utilize evidence based practices to educate students with disabilities." *See* Doc. 49, p. 22. As a threshold matter, the Court would observe that regardless of whether the IDEA requires the use of evidence-based practices, it is abundantly clear from the record that the District made extensive use of evidence-based practices to educate Child Doe and to deal with her problematic behaviors. Ms. Belk testified at great length about the nature and variety of such practices that the District uses with Child Doe—including a great many that Plaintiff's expert, Dr. Jason Travers, specifically recommended—and the Hearing Officer found her testimony to be credible. *See* Hearing Transcript, Volume V, pp. 110–27. At any rate, though, it appears that at the present stage Plaintiff's objection on this point goes primarily to one particular practice that the District employed: the use of sensory integration treatment in Child Doe's BIP.[1]

---

[1] The Court gleans this from the Amended Complaint, *see* Doc. 41, ¶¶ 36–37, as the IDEA appeal briefing does not specify any particular practices which Plaintiff finds objectionably non-evidence-based.

At this point it is useful to turn to the text of the IDEA, which it turns out, does not use the phrase "evidence based practices." Rather, it simply requires the IEP's "special education and related services and supplementary aids and services" to be "based on *peer-reviewed research to the extent practicable.*" *See* 20 U.S.C. § 1414(d)(1)(A)(i)(IV) (emphasis added). The Court has not found any evidence in the record that sensory integration treatment is not based on peer-reviewed research, nor has it found any evidence in the record that the District's use of sensory integration treatment somehow prevented the District from utilizing services that are based on peer-reviewed research.

Dr. Travers testified that "behavior analysts don't talk about sensory input or sensory integration," because sensory integration is "a pseudoscientific intervention" that makes the unfalsifiable assumption that "the cause of these sensory seeking or sensory avoiding behaviors is neurological" without exploring the possibility that there are other motivations for the problematic behavior in question, such as seeking or avoiding attention, or seeking or avoiding items or activities. *See* Hearing Transcript, Vol. III, pp. 32–36. When utilized thus, he opined, sensory integration treatment can lead to reinforcement of maladaptive behaviors by rewarding them with pleasant activities. *See id.* at 37–39. But however legitimate his criticisms may be in other circumstances, they do not accurately describe the way that Child Doe's BIP utilized sensory integration techniques. Ms. Belk's testimony repeatedly displayed keen awareness of the different functions that Child Doe's problematic behaviors served in different contexts, rather than simply chalking it all up to bad neurological processing. *See, e.g.*, Hearing Transcript, Vol. V, p. 93 (Ms. Belk describing some of Child Doe's "protest behavior" as being an attempt to escape difficult work rather than an attempt to escape the classroom, which

she enjoyed); *id.* at 112 (Ms. Belk describing her use of differential reinforcement—an evidence-based method in Dr. Travers's opinion—by giving Child Doe "something meaningful or functional to do with her hands" such as using a pencil to conduct an activity with the rest of the class when "she's taking a sheet of paper and she's [self-stimulating] quite a bit" with it). Furthermore, although Ms. Belk shared some of Dr. Travers's general concerns about the potential for sensory integration techniques to be counterproductive, she concluded that "with a child with autism that has so many sensory issues like [Child Doe] does, to not plan any programming for that, in my opinion is not appropriate." *Id.* at 97. In reaching this conclusion, she relied in part on the professional judgment of, *inter alia*, "Doctor Brandi Steele, who is a sensory certified occupational therapist that did [Child Doe's] eval." *Id.* at 96.

There is undoubtedly a profoundly toxic lack of trust between Ms. Albright and other District personnel, and the Court does not know who, if anyone, is primarily to blame for the dismal state into which that relationship has fallen. It is also undoubtedly true that Ms. Albright disagrees with other members of Child Doe's IEP team about what Child Doe's true academic potential is. But ultimately, this Court's independent review of the administrative record, giving due weight to the Hearing Officer's credibility determinations, leads it to conclude by a preponderance of the evidence that the District provided Child Doe "an educational program reasonably calculated to enable [her] to make progress appropriate in light of [her] circumstances." *Endrew F.*, 137 S. Ct. at 1001. In other words, Child Doe was not denied a FAPE, the Hearing Officer's decision will be **AFFIRMED**, and Count 1 of the Amended Complaint will be **DISMISSED WITH PREJUDICE**.

## B. Plaintiff's Motions Regarding Untimeliness (Docs. 75, 84, 93)

Before moving on to Defendants' summary judgment motion, the Court needs to take up three other motions filed by Plaintiff, all of which concern whether Plaintiff may file various items after their respective deadlines to do so. On July 25, 2016, the Court entered a Case Management Order requiring that "[l]eave to amend pleadings and/or to add or substitute parties shall be sought no later than **OCTOBER 23, 2016**," and stating that "[t]he discovery deadline is **MARCH 24, 2017**." (Doc. 34, p. 2, §§ 3, 5) (emphases in original). Nevertheless, on May 4, 2017, Plaintiff filed her Motion to File Amended and Supplemental Complaint (Doc. 75)—more than half a year after the deadline for her to do so had passed, weeks after discovery had closed, *see* Doc. 65, p. 5, and six days after Defendants had moved for summary judgment on Plaintiff's claims in this case. Plaintiff contends that since the filing of her Amended Complaint on August 23, 2016, Defendants "have continued to violate the IDEA and discriminate and retaliate against Plaintiff and Child Doe," and that "[t]he hearing record on Plaintiff's fourth due process complaint,"— presumably arising from the same alleged post-August 23 violations—"was closed on 28 April 2017." *See* Doc. 75, pp. 2–3. Accordingly, Plaintiff "requests that she be granted leave to amend and supplement her Amended Complaint to include an appeal of the hearing officer's decision and/or a claim for attorneys' fees if she is the prevailing party," *id.* at 3, "that Defendants' Motion for Summary Judgment be denied as moot," *id.* at 4, and that discovery be re-opened and dispositive motions deadlines be reset after the new pleading is filed many months from now, *see id.* at 4–5. Defendants oppose this motion. *See* Doc. 80.

One day after filing her Motion to File Amended and Supplemental Complaint, Plaintiff filed a Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment, *see* Doc. 77, which the Court denied by text-only order that same day, pursuant to its explicit warning to the parties on March 17, 2017 that "**[n]o further extensions of deadlines will be granted for discovery or dispositive motions.**" *See* Doc. 65 (emphasis in original). Five days later, on May 10, Plaintiff filed a Second Motion for Extension to File Response to Motion for Summary Judgment, *see* Doc. 78, which the Court again denied by text-only order that same day. Plaintiff's deadline of May 12 to respond to Defendants' Motion for Summary Judgment passed with no such response being filed until around midnight from May 22 to 23, accompanied by yet another Motion to Accept Response to Summary Judgment Out of Time (Doc. 89)—ten and eleven days late, and notwithstanding the Court's two previous denials of her motions for extensions. Defendants also oppose this latest motion. *See* Doc. 90.

Finally, Plaintiff filed her Pretrial Disclosure Sheet (Doc. 92) on June 25, 2017, four days after the Case Management Order's deadline for her to do so. *See* Doc. 34, p. 4, § 9. This time, Plaintiff never even bothered to seek advance leave to do so. Instead, she filed a Motion to File Pretrial Conference Information Sheet Out of Time (Doc. 93) on the same day that she filed her Pretrial Disclosure Sheet (again, four days after the deadline). As with the other motions, Defendants oppose this motion.

Deadlines set in the scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)." *Hartis v.*

*Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). Sometimes other factors, such as prejudice to the nonmoving party, may be considered—but not in the absence of diligence by the moving party. *See id.* Good cause does not exist "[w]here there has been no change in the law, no newly discovered facts, or any other changed circumstance after the scheduling deadline for amending pleadings." *Hartis*, 694 F.3d at 948 (internal quotation marks and alterations omitted).

Plaintiff's Motion to File Amended and Supplemental Complaint does not state whether the factual allegations she would add to her complaint occurred before or after October 23, 2016, which was the deadline to seek leave to amend pleadings. Thus, Plaintiff has not made any showing of changed circumstances that would be necessary to support a finding of good cause to grant that particular Motion. Moreover, Plaintiff failed to attach to this Motion a copy of the proposed pleading as required by Local Rule 5.5(e).

Furthermore, the Court finds that Plaintiff has not been diligent in attempting to meet this Court's deadlines. Of the eighteen motions that Plaintiff has filed in this case, eleven of them have sought some sort of extension or continuance of a deadline. *See* Docs. 37, 42, 47, 48, 50, 52, 75, 77, 78, 89, 93. And at least four of those eleven motions for extensions were themselves filed *after* the deadline at issue had already passed. *See* Docs. 42, 50, 89, 83. Plaintiff's counsel represents that medical emergencies in Plaintiff's counsel's family have made it difficult for her to meet the Court's deadlines in this case. The Court is very sympathetic to the difficulties that these medical emergencies are causing to Plaintiff's counsel, but at some point, a Court's orders and deadlines must

mean something.  The Court cautioned the parties in a text-only order dated October 31, 2016 that "[a]lthough the Court is very sympathetic to Plaintiff counsel's current situation, no further extensions will be granted, as she has already requested and received many deadline extensions in not only this case but also several others in which she has recently appeared before the Court."  Despite being put on very clear notice at that time that the Court would not indulge any further requests for extensions, Plaintiff opted not to change or add counsel.

As the Court observed in its October 31, 2016 text-only order, this is not the only case before the undersigned in which Plaintiff's counsel has struggled to meet deadlines. In *Brittany O v. Bentonville Sch. Dist. et al.*, Case No. 5:15-cv-5020, Plaintiff's counsel filed nineteen motions, of which twelve were requests for extensions or continuances of deadlines, *see id.* at Docs. 2, 38, 48, 76, 78, 80, 99, 100, 136, 144, 154, 157, an additional one which sought grossly untimely relief, *see id.* at Doc. 102, and an additional two which were direct consequences of the Court's rulings regarding timeliness, *see id.* at Docs. 105, 111.  And of these fifteen motions related to timeliness issues, at least three of them were themselves filed after the deadline at issue had already passed.  *See id.* at Docs. 48, 154, 157.  In *Brittany O. v. New Boston Enters., Inc. et al.*, Case No. 5:15-cv-5269, Plaintiff's counsel filed four motions, of which two sought extensions or stays of deadlines, *see id.* at Docs. 53, 58.  And in *Swearingen et al. v. Ozark Mountain Sch. Dist.*, Case No. 3:16-cv-3029, Plaintiff's counsel filed six motions, of which three sought extensions of deadlines, *see id.* at Docs. 22, 31, 42, at least one of which was filed after the deadline at issue had already passed, *see id.* at Doc. 42.

In other words, the Court estimates that nearly three quarters of the motions that Plaintiff's counsel has filed in cases where she appears before the undersigned have either sought relief from or disregarded this Court's deadlines, or otherwise pertained to untimeliness issues.[2]  These motions are remarkable not only for the share they comprise of Plaintiff's counsel's overall motion practice before the undersigned, but also for their sheer objective numerosity: at least 31 such motions in four[3] cases, many of which were opposed and required significant oppositional briefing.  And this does not even take into account other situations in which Plaintiff's counsel was technically compliant with a deadline, but at such late moments as to create confusion and uncertainty about whether the deadline was actually met, *see, e.g.*, *Brittany O v. Bentonville Sch. Dist. et al.*, Case No. 5:15-cv-5020, Doc. 170-1, or to otherwise create inequitable circumstances for opposing parties, *see, e.g.*, *Albright et al. v. Mountain Home Sch. Dist. et al.*, Case No. 3:16-cv-3011, Doc. 65.  Although the Court tries to accommodate reasonable requests for extensions, the Court's indulgence is not limitless; at some point, deadlines must become firm if cases are to proceed in an orderly and predictable manner that is fair to all parties and stakeholders and that facilitates efficient docket management for *all* of the Court's cases.

But more to the point, the Court finds that Plaintiff did not make diligent efforts to meet this Court's deadlines with respect to her Response to Defendants' Motion for Summary Judgment or with respect to her Pretrial Disclosure Sheet.  As described above,

---

[2] Plaintiff's counsel has also appeared before the Court in *Gentry et al. v. Mountain Home Sch. Dist.*, Case No. 3:17-cv-3008, which was opened fairly recently and has not yet seen any motions filed by any party.

[3] *But see* n.1, *supra*.

the Court gave ample warning on March 17, May 7, and again on May 10, that no summary-judgment response would be accepted after May 12; a diligent effort to comply with this Court's orders would have been to file a summary-judgment response on or before May 12, even if the response were skeletal and accompanied by yet another motion for leave to file an untimely supplement. And as described above, Plaintiff did not even bother to seek leave to file an untimely pretrial disclosure sheet until four days after the deadline had passed. Accordingly, Plaintiff's Motions to Accept Response to Summary Judgment Out of Time (Doc. 84), and to File Pretrial Conference Information Sheet Out of Time (Doc. 93) will be **DENIED**, and Plaintiff's Response to Motion for Summary Judgment (Doc. 81), supporting materials thereto (Docs. 82–88), and Pretrial Disclosure Sheet (Doc. 92) will be **STRICKEN**.[4] Plaintiff's Motion to File Amended and

---

[4] The Court observes that in paragraph 2 of Plaintiff's Response to Motion for Summary Judgment (Doc. 81), she moves the Court under Fed. R. Civ. P. 41(a)(2) to dismiss without prejudice all of her individual claims against Ms. Atkinson and all of her claims based on 42 U.S.C. § 1983. To whatever extent that motion were to survive the Court's striking of the Response in which it is embedded, the Court would deny it because, as this Court has reminded Plaintiff's counsel in another case, "a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum." *See Brittany O v. Bentonville Sch. Dist. et al.*, Case No. 5:15-cv-5020, Doc. 110, p. 4 (quoting *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999)). If Plaintiff dismissed these claims without prejudice and then refiled them in another lawsuit, she would evade this Court's orders and her deadline to respond to Defendants' Motion for Summary Judgment; this would also waste judicial resources and prejudice Defendants by forcing them to defend a second time against claims on which they had already moved for summary judgment. Furthermore, the Court is skeptical whether Rule 41(a)(2) even authorizes voluntary dismissal of only some, rather than all, of a party's individual claims. "Both Rules 41(a)(1) and 41(a)(2) apply by their terms to dismissal of an 'action,' which contrasts with Rule 41(b), which provides that 'a defendant may move for dismissal of an action or of any claim against him.'" *Graco, Inc. v. Techtronic Indus. N. Am., Inc.*, 2010 WL 915213, at *2 (D. Minn. Mar. 9, 2010) (quoting *Gronholz v. Sears, Roebuck and Co.*, 836 F.2d 515, 518 (Fed. Cir. 1987)). "As a consequence, while often dubbed a Rule 41(a) voluntary dismissal, the procedure whereby a court grants plaintiff's motion to dismiss one count of a multi-count complaint is more properly viewed as a Rule 15 amendment to the complaint." *Id.* (internal quotation marks and alterations omitted).

Supplemental Complaint and Related Relief (Doc. 75) will likewise be **DENIED**, not only because as a general matter Plaintiff has not made diligent efforts to comply with this Court's deadlines, but also more specifically because, as described above, Plaintiff has not shown changed circumstances that would warrant extending the deadline to amend pleadings, and because Plaintiff has not complied with Local Rule 5.5(e).

### C. Defendants' Motion for Summary Judgment (Doc. 72)

Although the Court has denied Plaintiff's Motion to Accept Response to Summary Judgment Out of Time, that does not mean Defendants are automatically entitled to summary judgment. *See* Local Rule 7.2(f). The Court will deem admitted or undisputed all assertions of fact that Defendants have made for purposes of their Motion for Summary Judgment, *see* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(c), but the Court must still make an independent and reasoned determination of whether, given those undisputed or admitted facts, Defendants are entitled to judgment as a matter of law, *see* Fed. R. Civ. P. 56(e)(3). Accordingly, after reciting the legal standard, the Court will determine whether Defendants are entitled to summary judgment on Plaintiff's claims. In doing so, the Court will first consider Defendants' affirmative defense that Plaintiff failed to exhaust her administrative remedies under the IDEA, because the temporal scope of Plaintiff's claims hinges on the validity of this defense. Then the Court will proceed to consider Plaintiff's claims under 42 U.S.C. § 1983 in Count 2 of her Amended Complaint, her claims under the Rehabilitation Act and the ADA in Counts 3–5 of her Amended Complaint, and finally her claims under Arkansas state law in Count 6 of her Amended Complaint.

---

The Court has already explained above that the deadline to seek leave to amend pleadings has long ago passed, and that good cause for extending that deadline does not exist.

### 1. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the non-moving party, and give the non-moving party the benefit of any logical inferences that can be drawn from the facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). The moving party bears the burden of proving the absence of any material factual disputes. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

If the moving party meets this burden, then the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). These facts must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986)).

### 2. IDEA Exhaustion

As previously discussed *supra*, the IDEA establishes an administrative framework for securing the right of disabled children to receive a FAPE. A party may bring a lawsuit

in federal court to secure her right under the IDEA to receive a FAPE, but only after exhausting her administrative remedies at the state level. *See* 20 U.S.C. § 1415(i)(2)(A), (l). And although the IDEA does not preempt parties from also seeking relief under the United States Constitution, the ADA, or the Rehabilitation Act, it does require "that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA]," the IDEA's administrative remedies "shall be exhausted to the same extent as would be required had the action been brought under [the IDEA.]" *See id.* at § 1415(l). Whether the relief being sought under these other laws is also available under the IDEA, turns on whether the relief being sought is "for the denial of a FAPE." *Fry v. Napoleon Comm. Schs.*, 137 S. Ct. 743, 752 (2017).

"[I]n determining whether a suit indeed seeks relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.* (internal quotation marks omitted). This inquiry is not a search for "magic words" in the complaint, and it "does not ride on whether a complaint includes (or, alternatively, omits) the precise words[] 'FAPE' or 'IEP.'" *Id.* at 755. In *Fry*, the Supreme Court offered a pair of hypothetical questions that may assist this inquiry:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* at school— say, a public theater or library? And second, could an *adult* at the school— say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 756.

The instant case presents a couple of pertinent oddities. One is that Ms. Albright not only is the mother of Child Doe, but also is an employee of the District; and in addition to the claims she brings on her Child Doe's behalf, she asserts on her own behalf a claim that the District retaliated against her in violation of the Rehabilitation Act. However, all of the alleged harms on which the Amended Complaint explicitly premises this claim also happen to be various ways that she contends her daughter was denied a FAPE:

> . . . denying the Plaintiff meaningful participation in Doe's IEP meetings, repeatedly agreeing to and then canceling a meeting to review the student's records; refusing to allow the Plaintiff to see certain records, despite the fact that the Plaintiff is entitled to all of Doe's records as her parent; destroying certain records; refusing to respond to the Plaintiff's letters or phone calls; refusing to allow the Plaintiff to bring someone to assist her at an IEP meeting; suddenly refusing to allow the Plaintiff to tape record an IEP meeting; always having the Defendant's attorney, Sharon Street[t], present whenever there is an interaction with the Plaintiff (although the Defendant District does not normally do this for other parents); and refusing to meet with the Plaintiff if Streett could not be present at a time requested by the Plaintiff.

(Doc. 41, ¶ 91). Thus, it would appear that Ms. Albright's claims brought on her own behalf are subject to the IDEA's administrative exhaustion requirement.

Another oddity is that while the Amended Complaint includes an explicit appeal from a formal administrative determination that Child Doe received a FAPE, it also includes many factual allegations regarding events that were subjects of prior IDEA administrative proceedings which were settled before final adjudication. As the Supreme Court observed in *Fry*:

> [A] court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the [IDEA]'s remedies before switching midstream. . . . A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy. Whether that is so depends on the facts; a

court may conclude, for example, that the move to a courtroom came from a late-acquired awareness that the school had fulfilled its FAPE obligation and the grievance involves something else entirely. But prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE . . . .

137 S. Ct. at 757.

Here, after a careful review of the Amended Complaint, the Court has been able to identify only two allegations whose substance does not concern the denial of a FAPE. One is the allegation that District personnel made multiple false police reports and allegations of child abuse against Ms. Albright. *See* Doc. 41, ¶¶ 23, 31, 33. The other is the allegation that District personnel subjected Child Doe to strip searches for recording devices that Ms. Albright hid on her person. *See id.* at ¶ 32. Both of these allegations articulate grievances that could be brought against public officials in non-educational settings, by adults as well as by children; accordingly, to the extent any of Plaintiff's federal claims are premised on these particular allegations, they are not subject to the IDEA's administrative exhaustion requirement. However, in all other respects the IDEA's administrative exhaustion requirement applies to Plaintiff's federal claims, because all other facts on which they are premised fundamentally concern the appropriateness of Child Doe's education plan and environment.

Finally, as this Court and many other district courts within the Eighth Circuit have previously observed, "[i]nvoking a due process hearing and then settling the claims prior to the hearing does not rise to the level of an exhaustion of administrative remedies," because "[a]llowing the settlement to constitute exhaustion would permit plaintiffs to proceed with their claims without developing a factual record, allowing the educational system to exercise its expertise in resolving this conflict, or providing the parties a full

opportunity to avoid excessive litigation in direct contravention of Congress' intent behind the exhaustion requirement." *R.P. ex rel. K.P. v. Springdale Sch. Dist.*, 2007 WL 552117, at *4 (W.D. Ark. Feb. 21, 2007) (Hendren, J.) (quoting *S.A.S. v. Hibbing Pub. Sch.*, 2005 WL 1593011, at *3 (D. Minn. July 1, 2005)) (internal quotation marks and alterations omitted); *see also Smith v. Rockwood R-VI Sch. Dist.*, 2017 WL 1633065, at *6 (E.D. Mo. May 2, 2017) ("Courts within this circuit have held that voluntary dismissals and settlement agreements do not satisfy the IDEA exhaustion requirement.") (collecting cases). In other words, while Plaintiff may be entitled to bring a claim for breach of contract based on alleged violations of her prior settlement agreements with the District, that does not change the fact that she has not exhausted her administrative remedies with respect to any alleged FAPE denials other than those that are the subject of the specific administrative adjudication being appealed in Count 1 of her Amended Complaint.

What this means is that, with the exception of allegations regarding the aforementioned alleged strip searches and false reports, Plaintiff's federal claims in this case may only be premised on harms alleged to have occurred between November 15, 2013 and October 17, 2014, which is the temporal scope of the allegations undergirding her sole IDEA administrative proceeding to have been exhausted. *See* Doc. 72-1, p. 1. Those alleged harms can be summarized as follows: (1) District personnel filed false allegations of child abuse against Ms. Albright, *see* Doc. 41, ¶ 31; (2) District personnel subjected Child Doe to strip searches for recording devices that Ms. Albright had hidden on her, *see id.* at ¶ 32; (3) Ms. Atkinson generally endeavored to discredit Ms. Albright with District personnel and filed false police reports against her, *see id.* at ¶ 33; (4) Ms.

Belk failed to implement evidence-based practices when designing behavioral interventions and strategies for Child Doe, *see id.* at ¶¶ 34–37; (5) Child Doe was denied access to remedial instruction on account of her disability, *see id.* at ¶ 38; and (6) the District held a meeting on September 5, 2014, at which the district attempted to change Child Doe's IEP without Ms. Albright attending or having been given notice, *see id.* at ¶ 39.

### 3. Counts 2–6 of the Amended Complaint

In Count 2 of her Amended Complaint, Plaintiff alleges that various violations of Child Doe's constitutional rights occurred. Specifically, she alleges that Child Doe was denied "her constitutionally protected right to a free appropriate public education and right to bodily integrity and right to be secure in her person," *see id.* at ¶ 52, and "her right to substantive due process," *see id.* at ¶ 53, in violation of the Fourth Amendment, *see id.* at ¶¶ 53, 56, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment, *see id.* at ¶¶ 53–59, 61, 64–65. Ms. Albright does not articulate any specific constitutional rights of her own that she believes have been violated; the closest the Amended Complaint comes to this is a statement that "Plaintiff has a liberty interest in raising her child and in directing her education and the right to meaningful participation in her educational programming, whose rights were violated by the Defendants' actions." *Id.* at ¶ 66. Plaintiff brings these constitutional claims against the District and Ms. Atkinson under 42 U.S.C. § 1983, which authorizes suits against state actors for violations of federal constitutional rights.

For a substantive due process violation to occur, a state actor must have "violated one or more fundamental rights," *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 816

(8th Cir. 2011), in a manner that was "inspired by malice or sadism," *Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 937 (8th Cir. 2012) (quoting *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)).  Education is not a fundamental right under the Fourteenth Amendment, *see San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 34–35 (1973), and the Equal Protection Clause permits state actors to discriminate on the basis of disability so long as there is a rational basis for doing so, *see Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367–68 (2001).  So to whatever extent Plaintiff's substantive due process and equal protection claims are predicated on the District or Ms. Atkinson having relied on Ms. Belk's professional judgment with respect to behavioral interventions and strategies, *see* Doc. 41, ¶¶ 34–37, having decided not to provide Child Doe with certain remedial instruction on the grounds that it would be futile to do so, *see id.* at ¶ 38, or having a meeting to discuss changes to Child Doe's IEP outside the presence of Ms. Albright, *see id.* at ¶ 39, those claims must be dismissed because they complain of rational decisions that do not implicate fundamental rights.

Plaintiff's constitutional claims must also be dismissed to the extent they are predicated on her allegations that Child Doe was strip-searched or that false reports were filed, because there is no genuine dispute that these events never occurred.  Defendants contend that no strip search occurred and that no false reports were ever filed, *see* Doc. 74, p. 12, and they have submitted evidence to support those contentions in the form of deposition testimony, *see* Doc. 72-6, pp. 4–5; Doc. 72-8, pp. 3–6, and a copy of a pertinent police report that indicates it was not filed by Ms. Atkinson, *see* Doc. 72-7.  As discussed *supra* in this Opinion and Order, Plaintiff failed to timely rebut these factual contentions, so they are deemed admitted.  As there are no other factual allegations within

the time period circumscribed by the IDEA's administrative exhaustion requirements, Count 2 of the Amended Complaint will be **DISMISSED WITH PREJUDICE**.

Plaintiff's claims in Counts 3, 4, and 5, also fail for similar reasons. These claims are all brought only against the District, *see* Doc. 41, ¶¶ 71, 88, 96, and they respectively allege disability discrimination against Child Doe in violation of Section 504 of the Rehabilitation Act, retaliation against Ms. Albright in violation of that same statute, and disability discrimination against Child Doe in violation of Title II of the ADA. Section 504 and Title II prohibit the exclusion of qualified individuals with disabilities from participation in, or receiving benefits of, public services or programs receiving federal funding. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The enforcement, remedies, and rights under these two statutes are identical. *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000). "Where alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *Id.* "In order to establish bad faith or gross misjudgment, a plaintiff must show that the defendant's conduct departed substantially from accepted professional judgment, practice or standards so as to demonstrate that the persons responsible actually did not base the decision on such a judgment." *B.M. ex rel. Miller v. South Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013) (internal alterations and quotation marks omitted). Mere noncompliance with the relevant federal statutes is not enough; rather, the noncompliance "must deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent." *Id.*

The District contends there was no such bad faith or gross misjudgment here, and that it did not attempt to obstruct Ms. Albright's participation in the IDEA process, *see* Doc. 74, pp. 17–18, and it has submitted evidence to support this contention in the form of deposition testimony from Ms. Albright, *see* Doc. 72-2, pp. 11–12, and the District's former superintendent, *see* Doc. 72-6, p. 45. As with the factual allegations regarding strip searches and false reports, these contentions are deemed admitted because Plaintiff failed to timely rebut them. Accordingly, the District is entitled to summary judgment on Plaintiff's claims under the Rehabilitation Act and the ADA, and Counts 3–5 will be **DISMISSED WITH PREJUDICE**.

This leaves only Plaintiff's state-law claims in Count 6, which means no claims remain over which the Court has original federal-question jurisdiction. Accordingly, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(c)(3), and Count 6 of the Amended Complaint will be **DISMISSED WITHOUT PREJUDICE**.

### D. Defendants' Motion to Exclude (Doc. 67), Motion Requesting that the Court Disregard Plaintiff's Improperly Filed Reply (Doc. 97), and Motions in Limine (Docs. 98, 99, 101, 103)

Defendants have filed a Motion to Exclude the opinions of Plaintiff's expert Dr. Howard Knoff. *See* Doc. 67. Dr. Knoff's opinions are not referenced in the briefing on the IDEA appeal, and they are not in the summary judgment record.[5] Given the Court's prior rulings in this Order, no claims remain for trial. Thus, this Motion, Defendants' Motion

---

[5] Plaintiff's untimely Response to Defendants' Motion for Summary Judgment does reference Dr. Knoff's expert report. *See, e.g.*, Doc. 86, p. 19. But this material was stricken from the record for the reasons given in Section II.B of this Order *supra*.

Requesting that the Court Disregard Plaintiff's Improperly Filed Reply, and Defendants' four Motions in Limine are **MOOT**.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that:

- The decision of the Hearing Officer is **AFFIRMED**, and Count 1 of Plaintiff Jacquie Albright's Amended Complaint is **DISMISSED WITH PREJUDICE**;

- Plaintiff's Motion to File Amended and Supplemental Complaint and Related Relief (Doc. 75) is **DENIED**;

- Plaintiff's Motion to Accept Response to Summary Judgment Out of Time (Doc. 84) is **DENIED**, and her Response to Summary Judgment and supporting materials (Docs. 81–88) are **STRICKEN**;

- Plaintiff's Motion to File Pretrial Conference Information Sheet Out of Time (Doc. 93) is **DENIED**, and her Pretrial Disclosure Sheet (Doc. 92) is **STRICKEN**;

- Defendants' Motion for Summary Judgment (Doc. 72) is **GRANTED**, in that Counts 2–5 of Plaintiff's Amended Complaint are **DISMISSED WITH PREJUDICE** and Count 6 of Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**; and

- Defendants' Motion to Exclude Opinions of Dr. Howard Knoff (Doc. 67), Motion Requesting that the Court Disregard Plaintiff's Improperly Filed Reply (Doc. 97), and four Motions in Limine (Docs. 98, 99, 101, 103) are **MOOT**.

Judgment will be filed contemporaneously with this Order.

**IT IS SO ORDERED** on this _5-11_ day of July, 2017.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE